IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Brief April 8, 2026

## STATE OF TENNESSEE v. RICHARD HIGGS, JR.

**Appeal from the Criminal Court for Shelby County**
**No. C2105804   Jennifer Fitzgerald, Judge**

_____

### No. W2025-00563-CCA-R3-CD

_____

A Shelby County jury convicted the Defendant, Richard Higgs, Jr., of rape of a child, sexual battery by an authority figure, and incest, and the trial court sentenced him to a total effective sentence of fifty years.  On appeal, the Defendant contends that the evidence is insufficient to support his convictions.  After review, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, P.J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN and JOHN W. CAMPBELL, SR., JJ., joined.

Phyllis Aluko, District Public Defender; Constance J. Barnes (at trial) and Tony N. Brayton (on appeal), Assistant Public Defenders, Memphis, Tennessee, for the appellant, Richard Higgs, Jr.

Jonathan Skrmetti, Attorney General and Reporter; Lacy E. Wilber, Senior Assistant Attorney General; Steven J. Mulroy, District Attorney General; and Gavin A. Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I. Background and Facts

This case arises from the Defendant raping his two daughters, M.C. and D.C., when they were seventeen and fifteen years old, respectively.[1]  For these offenses, a Shelby County grand jury indicted the Defendant for: one count of rape of a child for D.C., one count of sexual battery by an authority figure for M.C., and one count of incest for D.C.

_____

[1] It is the policy of this court to refer to minors by their initials.

## A. Motion in Limine

Prior to trial, the State filed a motion seeking to introduce a forensic interview conducted with D.C. pursuant to Tennessee Code Annotated section 24-7-123. The trial court held a hearing on the motion, during which D.C., M.C., and the forensic interviewer employed by the Memphis Child Advocacy Center all testified to the accuracy of the video recordings of the victims' forensic interviews. Without objection, the interviews were entered into the record as evidence.

## B. Trial

The following evidence was presented at the Defendant's trial: The victims' mother testified that her daughters, D.C. and M.C., were fifteen and seventeen years old, respectively, at the time of trial, and that the Defendant was their father. The Defendant and the victims' mother had a long relationship and three children together. The victims' mother recalled that their romantic relationship had ended when D.C., their youngest child, was three years old; the Defendant was not present regularly in their lives until D.C. turned ten. When D.C. turned ten, the Defendant became part of their lives again, and the victims would sometimes spend the night at his house.

On July 19, 2021, D.C. and M.C were twelve and fourteen years old, respectively, and were spending the night at the Defendant's house. At 3:00 a.m., the victims' mother received a phone call from M.C. M.C. asked her mother to come pick her up, saying she was uncomfortable. The victims' mother drove to the Defendant's house immediately. M.C. came outside and told her mother that the Defendant had come into her bathroom and was touching her and "daring her" to perform sexual acts. The victims' mother immediately left the Defendant's house with D.C. and M.C. and called the police from the car.

The 911 operator directed the victims' mother to drive to a nearby gas station where they were met by law enforcement. An officer spoke to the victims separately following which the group agreed to file a police report. The victims' mother then drove them to the Rape Crisis Center where the victims were examined and interviewed. Law enforcement took possession of the victims' phones and the victims consented to a search of their phones.

The victims' mother testified that, in the aftermath of these events, D.C. had become suicidal, cutting herself, and feeling mentally and emotionally unstable. This behavior was not present prior before the events. D.C. had attempted to get help at an outpatient facility but had fled the facility. Prior to these events, D.C. had been active and boisterous; she had become quiet and depressed in the aftermath. M.C. had been "okay pretty much."

M.C. testified that she was seventeen years old and, on the night of the rape, was at

2

the Defendant's house with D.C., another sister, and her stepmother. The Defendant asked M.C. to come into the bathroom with him. In the bathroom, the Defendant asked her questions about her attraction to boys and had she ever "been touched" by a boy. The Defendant asked her for a hug and told M.C. to touch him. He then took her hand and tried to put it inside his pants on his penis. The Defendant touched M.C.'s breast with his hand and then put his hand on her vagina on top of her clothes. M.C. testified that she was "devastated, shocked, scared" by his actions. The Defendant then used M.C.'s phone and searched for pornography titled "Daddy's Little Girl" on the internet. D.C. had sent a text message to M.C. asking why she was in the bathroom with the Defendant and stating that she would call their mother. D.C. stood outside the locked bathroom door, knocking on it, until the Defendant unlocked and let M.C. leave.

After M.C. went back into the living room, the Defendant punched D.C. in the chest. M.C. called their mother at that point and asked her to pick them up. M.C. told her mother and stepdad in the car what had happened inside the Defendant's house.

D.C. testified that she was fifteen years old and recounted the events of that evening consistently with M.C.'s testimony. After D.C. knocked on the bathroom door, M.C. came out and the Defendant was mad. D.C. testified that the Defendant punched her in the chest and took her phone. D.C. started crying and went into the bathroom. The Defendant followed her in, locked the door, and told D.C. she was mad because she could not "get none of this," indicating his penis. The Defendant put D.C.'s hands inside his pants on his penis. The Defendant told D.C. to get on the ground which she did, and then he pulled her clothes off as well as his own. The Defendant got on top of D.C. and penetrated her vagina with his penis. This lasted for ten seconds and then M.C. knocked on the bathroom door. After their mother arrived, as M.C. and D.C. were leaving, the Defendant told them he would send them money. Inside their mother's car, D.C. immediately told her mother what happened, and she called the police. They met law enforcement at a gas station and then M.C. and D.C. were taken to the rape crisis center and interviewed and physically examined.

Memphis Police Department ("MPD") Officer Wesley Thompson testified that he responded to the dispatcher's call to the gas station and questioned the victims there. Their statements led Officer Thompson to accompany them to the Rape Crisis Center where a sexual assault kit was performed on D.C.

MPD Officer Bruce Levi responded to the call alongside Officer Thompson and took possession of M.C.'s phone. MPD Officer Joseph Knight, as part of his involvement with the investigation as a member of MPD's Juvenile Abuse Unit, obtained a search warrant for the Defendant's DNA and collected four samples. Dr. Nina Sublette, Ph.D., testified as an expert in forensic sexual assault examinations. She stated that she interviewed D.C., who was twelve years old at the time, approximately four hours after the rape. In the interview, D.C. reported the events to Dr. Sublette consistently with her

3

account at trial. D.C. reported that the Defendant used threats and verbal intimidation to commit the rape. During her examination of the victim, Dr. Sublette noted an acute laceration on an area of D.C.'s vagina.

Sarah Lawrence, an investigator employed by the Tennessee Bureau of Investigation, testified as an expert in the field of forensic biology and stated that she analyzed the DNA evidence collected in this case. She analyzed the items and the DNA swabs taken from D.C. and the Defendant, and she testified that D.C.'s vaginal swabs indicated the presence of male spermatozoa DNA, and her underwear indicated the presence of male DNA. The DNA analyzed matched that which was collected from the Defendant.

For the aggravated sexual battery conviction, the State elected the alleged act of the Defendant touching M.C.'s breasts.

Based on this evidence, the jury convicted the Defendant of one count of rape of a child, one count of sexual battery by an authority figure, and one count of incest. After a sentencing hearing, the trial court sentenced the Defendant as a Range II offender and imposed a sentence of forty years for the rape of a child conviction. For the sexual battery conviction, the trial court imposed a sentence of ten years, to be served consecutively. Finally, the trial court imposed a sentence of eight years for the incest conviction, to be served concurrently, for a total effective sentence of fifty years. It is from these judgments that the Defendant now appeals.

## II. Analysis

The Defendant contends that the evidence is insufficient to support his convictions for rape of a child and sexual battery. He contends that there was insufficient proof of penetration for the rape of a child conviction and "meager" proof, based only on D.C.'s and M.C.'s accounts. He contends that the State failed to prove he was the father of D.C. The State responds that the evidence was sufficient to prove that the Defendant raped D.C. by inserting his penis into her vagina and that penetration was proven by the presence of male DNA in D.C.'s vaginal swab. As to the sexual battery conviction, the State responds that M.C.'s testimony, corroborated by D.C.'s testimony, was sufficient from which a jury could reasonably conclude that the Defendant had touched M.C.'s intimate parts. We agree with the State.

When an accused challenges the sufficiency of the evidence, this court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt

based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). "'A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State.'" *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978) (quoting *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973)). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This court must afford the State the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

As charged here, rape of a child is the "unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is more than three (3) years of age but less than thirteen (13) years of age." T.C.A. § 39-13-522 (2019). "Sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital . . . openings of the victim's . . . body [.]" *Id.* § 39-13-501(7). In order to find a defendant guilty of rape of a child, the State must prove beyond a reasonable doubt: (1) that the defendant had unlawful sexual penetration of the alleged victim or the alleged victim had unlawful sexual penetration of the defendant; (2) that the alleged victim was more than three (3) years of age but less than thirteen (13) years of age; and (3) that the defendant acted either intentionally, knowingly or recklessly. *See* 7 Tenn. Prac. Pattern Jury Instr. T.P.I.-Crim. 10.12. "Sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body . . . ." T.C.A. § 39-13-501(7). Sexual battery by an authority figure, as charged here, is the "unlawful sexual contact" by a defendant with a victim less than thirteen years of age. *See* T.C.A. § 39-13-504(a). Sexual contact is defined as "the intentional touching of the victim's intimate parts, or . . . of the clothing covering the immediate area of the victim's . . . intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification. T.C.A. § 39-13-501(2). As relevant here, the State is required to prove beyond a reasonable doubt that the defendant was, at the time of the offense, in a position of trust, or had supervisory or disciplinary power over the victim, and used that authority to accomplish the sexual contact. T.C.A.§39-13-527(3)(A)(B). A person commits incest who engages in sexual penetration with a person, knowing the person to be without regard to legitimacy the person's natural parent. T.C.A. §39-15-302(a)(1)(b)(2).

The evidence presented, viewed in the light most favorable to the State, was that the Defendant forced D.C. inside a bathroom in his home, locked the door, and vaginally raped her with his penis. D.C.'s testimony alone is sufficient evidence from which a jury could find the Defendant guilty of rape. *State v. Bonds*, 189 S.W.3d 249, 256 (Tenn. 2005). Furthermore, the presence of male DNA, consistent with the Defendant's profile, was identified in a DNA swab from D.C.'s vagina. Dr. Sublette testified that D.C. reported to her, in the immediate aftermath of the rape, that the Defendant had penetrated her with his penis. D.C. also sustained an injury to her vaginal area, consistent with a sexual assault injury. This is sufficient evidence from which a jury could conclude that penetration, "however slight," occurred. D.C. was twelve years old at the time and therefore, a rational jury could conclude beyond a reasonable doubt that the Defendant was guilty of rape of a child.

The Defendant claims there is no proof that he knew that D.C. was his child. D.C.'s mother testified that he was the father of M.C., D.C., and a third shared child. D.C. testified that the Defendant was her father and identified him in the courtroom as her father and the man who raped her. This is sufficient evidence, based on the conclusion that the Defendant

6

raped D.C., that the Defendant is guilty of incest.

Pertaining to the sexual battery by an authority figure conviction, the evidence presented was that M.C., aged fourteen at the time, was spending the night at the Defendant's house when he called her into the bathroom. Inside the bathroom, the Defendant put his hand on M.C.'s breasts. M.C. testified that he was her father, as did her mother. M.C. and D.C. spent the night at the Defendant's home in his care, sufficient to establish that he was in a supervisory role as the parent and caregiver of M.C. and D.C. This evidence, coupled with the evidence that the Defendant touched M.C.'s breasts, is sufficient evidence of an intentional touching of her intimate parts from which a jury could conclude that the Defendant was guilty of sexual battery by an authority figure.

### III. Conclusion

After a thorough review of the record and relevant authorities, we affirm the trial court's judgments.

_s/ *Robert W. Wedemeyer*__

ROBERT W. WEDEMEYER, PRESIDING JUDGE